[Cite as *Wagner v. Athletico, Ltd.*, 2026-Ohio-888.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JON H. WAGNER, et al. | Case No. 2025 CA 00054 |
| Plaintiffs - Appellees | Opinion And Judgment Entry |
| -vs- | Appeal from the Licking County Court of Common Pleas, Case No. 22 CV 01138 |
| ATHLETICO, LTD. | |
| Defendant - Appellant | Judgment:   Reversed and Remanded |
| | Date of Judgment Entry: March 16, 2026 |

**BEFORE:** David M. Gormley; Craig R. Baldwin; Robert G. Montgomery, Judges

**APPEARANCES:** C. JOSEPH MCCOY, for Plaintiffs-Appellees; JENNIFER L. WILSON, JOSEPH G. BOGDEWIECZ, for Defendant-Appellant Athletico.

*Baldwin, J.*

{¶1}   The appellant, Athletico, appeals the jury's verdict against it and in favor of the appellees, Jon H. and Lynda Wagner.

**STATEMENT OF FACTS AND THE CASE**

{¶2}   Appellee Jon H. Wagner, who underwent physical therapy at appellant Athletico's Newark, Ohio location, suffered injuries on November 20, 2020, when a wooden board to which resistance bands were attached broke away from the wall during a therapy session and struck him in the forehead. The appellees filed a complaint against the appellant, as well as John Doe defendants, on October 7, 2022, setting forth a claim of negligence based upon an allegedly hazardous condition on the appellant's premises.

{¶3}   The appellant filed a motion for summary judgment on November 14, 2023, in which it argued that it owed the appellees no duty because the undisputed facts

demonstrated that it had no knowledge or notice of the allegedly dangerous or hazardous nature of the equipment. The trial court denied the appellant's motion for summary judgment.

{¶4} The matter proceeded to a jury trial on March 3, 2025, at which the following testimony was presented. The appellant is a physical therapy business. The appellant, which was previously located in Granville, Ohio, moved to a new location in Newark, Ohio in 2019. The appellant brought equipment with it to the new location as part of the move, including the equipment at issue in this case – the board to which resistance bands were attached that patients used to perform strengthening exercises.  The board was attached to a wall at the new location.

{¶5} The appellant's clinic manager S.M., who was involved in the transition of office locations, testified that the appellant contracted out the installation of equipment, including the board to which the resistance bands were attached. The appellant did not, itself, install the board at issue. Instead, it was installed by an outside contractor. The board had been up at the new location for approximately one year at the time of the incident involving appellee Jon Wagner.

{¶6} S.M. testified that the appellant performed annual safety assessments of its facilities, and that said assessments included assuring that wall fixtures, such as the board at issue in this case, are secure. Furthermore, S.M. testified that he assessed the security of the subject board every day that he was at the clinic, which included assessing whether the bands were frayed, whether there was any potential that the bands could break, and whether the board was secure. In addition, J.R., one of the appellant's physical therapy assistants, testified that he also assessed the security of the board prior to patients using it. In fact, J.R. testified that between November 2019 and November 2020,

he had demonstrated exercises using the subject board between 100 and 200 times, and that he had observed no defects or issues with the board or the resistance bands. J.R. was working with appellee Jon Wagner on the day of the incident, demonstrated the resistance band exercises using the board prior to the appellee's use of the bands, and oversaw the appellee's session. J.R. did not observe any issues regarding the equipment.

{¶7} Appellee Jon Wagner testified that each time he had used the resistance bands a member of the appellant's staff demonstrated the exercise, and that on the date of the incident J.R. pulled on the bands attached to the board first before the appellee performed his exercises using the board. The appellee testified that, during these demonstrations, he did not notice the board separating from the wall or being shaky, defective, or hazardous in any way. He testified further that he had completed two sets of ten repetitions using the board on the date of the incident with no issue, nor with any indication that the board was loose or defective in any way. On his third set, the board detached from the wall and struck his forehead. Following the incident, clinic manager S.M. observed insulation on some of the screws on the backside of the board, which indicated to S.M. that the board was screwed into drywall and not into a stud. However, J.R. and S.M. both testified that the appellant's staff had no knowledge that the bands or the board to which they were attached were unsafe prior to the November 20, 2020, incident. The appellees presented no evidence to the contrary, and instead relied on the doctrine of res ipsa loquitor to establish this element of their claim.

{¶8} The appellees rested their case, and the appellant moved for a directed verdict, arguing that the appellees had presented no evidence to demonstrate that the appellant knew or should have known of a dangerous condition associated with the equipment at issue. The trial court overruled the motion based upon res ipsa loquitur,

stating "… I guess I cannot say that if ordinary care had been observed by someone that it would not have occurred. On that basis, I'll overrule the directed verdict on the negligence case, negligence charge."

{¶9} The appellant presented its case and rested. It thereafter made a second motion for directed verdict, arguing that it had no notice of any defect regarding the subject equipment, and that res ipsa loquitur was inapplicable because the cause of the incident, i.e., improper installation of the equipment by another company, was known. The trial court overruled the appellant's second motion for directed verdict, stating, "…this certainly would appear to come under the res ipsa law that but for ordinary care this would not have occurred." The trial court stated further that "I don't disagree there's been no knowledge of any defect or problem there." The jury was instructed on, inter alia, res ipsa.

{¶10} The matter was submitted to the jury, who returned a verdict in favor of the appellees and awarded them a total of $110,000.00, $100,000.00 to appellee Jon Wagner for his injuries and $10,000.00 to appellee Lynda Wagner for loss of consortium. The appellant filed a timely appeal, and sets forth the following four assignments of error:

{¶11} "I. THE TRIAL COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT TO ATHLETICO AS TO APPELLEES' CLAIMS."

{¶12} "II. THE TRIAL COURT ERRED IN DENYING ATHLETICO'S MOTION FOR DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT WHERE APPELLEE FAILED TO PRESENT EVIDENCE OF KNOWLEDGE TO ESTABLISH A DUTY OWED."

{¶13} "III. THE TRIAL COURT ERRED AS A MATTER OF LAW BY FURNISHING INCORRECT AND UNWARRANTED JURY INSTRUCTIONS."

**{¶14}** "IV. THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS CONTRARY TO LAW, WARRANTING A NEW TRIAL."

**{¶15}** For ease of analysis, and because we find the appellant's second assignment of error to be dispositive, we will address the assignments of error out of order.

## ASSIGNMENT OF ERROR NO. II

**{¶16}** The appellant argues in its second assignment of error that the trial court erred when it denied its motion for directed verdict and judgment notwithstanding the verdict. We agree.

### *Standard Of Review*

**{¶17}** "The standard of review for the grant or denial of a motion for directed verdict is: whether there is probative evidence which, if believed, would permit reasonable minds to come to different conclusions as to the essential elements of the case, construing the evidence most strongly in favor of the non-movant. *Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169, 172, 539 N.E.2d 1114." *Stark Cty. Bd. of Commrs. v. Eslich Wrecking Co.*, 2002-Ohio-2656, ¶ 10 (5th Dist.). "When ruling on a motion for JNOV, a trial court applies the same test as in reviewing a motion for a directed verdict." *Teeter v. Ball Jar Corp.*, 2020-Ohio-6997, ¶ 57 (5th Dist.).

### *Analysis*

**{¶18}** The case sub judice is a personal injury case in which the appellees argued that the appellant was negligent in failing to maintain its premises in a safe condition and to warn of hazardous conditions thereon. The case of *Keister v. Park Center Lanes*, 3 Ohio App.3d 19 (5th Dist. 1981), although primarily a summary judgment case, is instructive regarding the analysis in negligence cases. The *Keister* court stated:

Compare a negligence case to a *hurdle race*. Plaintiff runs the race alone at first. Plaintiff's *run* to the *finish line* (verdict), is interrupted by several hurdles, each of which must be crossed in succession before he gets into the *stretch* -- the foot race to the finish line. Until he crosses all the hurdles he is in the hands of the judge. Legal questions are involved. When he reaches the stretch the race to the finish line is in the hands of the jury (fact finder).

*     *     *

*Plaintiff's hurdles*. Plaintiff's first hurdle is DUTY. He must identify a duty, or duties, owed him by the defendant. Because this is a law question he crosses the hurdle if he alleges and identifies the duty.

The second hurdle is BREACH of duty. The dimensions of the hurdle are fixed by the nature of the duty. Breach of duty is generally a question of fact. However, the jury has no right to consider the question (*i.e.,* the plaintiff does not cross the hurdle) unless the evidence in the specific case allows the inference that a specific duty was breached. Otherwise, as a matter of law, plaintiff fails to clear the duty hurdle.

*Id.* at 22. Thus, in this case, the appellees were required to establish a duty on the part of the appellant to overcome the first and second hurdles. The appellees, however, failed to overcome both the first and second hurdles, and thus failed to overcome the duty hurdle.

{¶19} It is undisputed that appellee Jon Wagner was an invitee on the appellant's premises. The issue of the duty owed to an invitee by a premises owner was addressed by this Court in *Ball v. New Era Golf BT Inc.,* 2022-Ohio-2125 (5th Dist.):

To prove a breach of the duty of care in a premises-liability action, the plaintiff must establish either (1) the defendant, through its officers or employees, was responsible for the hazard; (2) the defendant had actual knowledge of the hazard and neglected to promptly remove it or give adequate notice of its presence; or (3) the hazard existed for a sufficient length of time to reasonably justify the inference that the failure to remove it or warn against it was attributable to a lack of ordinary care. *Simmons* 2016-Ohio-525, ¶ 26, 60 N.E.3d 454 citing *Johnson v. Wagner Provision Co.*, 141 Ohio St. 584, 589, 49 N.E.2d 925 (1943).

*Id.* at ¶ 25. The *Ball* Court stated further:

… In negligence cases, the foreseeability of an injury is the core of whether a duty is owed to the plaintiff. *See Clark v. Barcus*, 5th Dist. Muskingum No. CT2017-0019, 2018-Ohio-152, 2018 WL 456222, ¶ 20 citing *Menifee v. Ohio Welding Prods., Inc.* 15 Ohio St.3d 75, 77, 15 Ohio B. 179, 472 N.E.2d 707 (1984).

"Where negligence revolves around the existence of a hazard or defect, a duty of reasonable care does not arise unless the defendant has notice, either actual or constructive, of such hazard or defect." *Bieber v. Perry Cnty. Bd. of Comm'rs*, 5th Dist. Perry No. 2019 CA 00016, 2020-Ohio-3996, 2020 WL 4558073, ¶ 32 quoting *Cone v. City of Canton*, 5th Dist. Stark No. 2017CA00043, 2017-Ohio-8035, 2017 WL 4350971, ¶ 14 quoting *Davis v. City of Akron*, 9th Dist. Summit No. 19553, 2000 Ohio App. LEXIS 843, 2000 WL 254900, *1 (Mar. 8, 2000), citing *Heckert v. Patrick*, 15 Ohio St.3d 402, 15 Ohio B. 516, 473 N.E.2d 1204 (1984)."Notice may be actual

or constructive, the distinction being the manner in which the notice is obtained rather than the amount of information obtained." *Bieber*, 2020-Ohio-3996, ¶ 35 quoting *Current v. Ohio Dep't of Rehab. & Correction*, 2020-Ohio-1247, 153 N.E.3d 648, 2020 WL 1528434, ¶ 8 citing *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-1052, 2010-Ohio-4736, ¶ 14. Actual notice exists where the information was personally communicated to or received by the party. *Id.* "Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice." *Id.*, citing *In Re Estate of Fahle*, 90 Ohio App. 195, 197, 105 N.E.2d 429 (6th Dist.1950).

*Id.* at ¶ 26-27.

{¶20} In the case before us, there was no evidence establishing that the appellant had notice, actual or constructive, regarding the potentially hazardous condition of the board to which the resistance bands were secured. Instead, the appellees, and the trial court, erroneously relied upon the doctrine of res ipsa loquitor to make this analytical leap.

{¶21} Res ipsa loquitor was recently discussed by this Court in *Austin v. OhioHealth Mansfield Hosp.*, 2025-Ohio-4932 (5th Dist.):

"The doctrine of res ipsa loquitur is not a substantive rule of law furnishing an independent ground for recovery." *Jennings Buick, Inc. v. City of Cincinnati*, 63 Ohio St.2d 167, 169, 406 N.E.2d 1385 (1980). Rather, the doctrine "is an evidentiary rule which permits, but does not require, a jury to draw an inference of negligence from circumstantial evidence." *King v. Emergency Med. Transp., Inc.*, 2024-Ohio-2542, ¶ 25, 247 N.E.3d 1075 (5th Dist.), citing *Estate of Hall v. Akron Gen. Med. Ctr.*, 125 Ohio St. 3d

300, 2010-Ohio-1041, ¶ 16, 927 N.E.2d 1112. Thus, the doctrine "does not alter the nature of the plaintiff's claim in a negligence action; it is merely a method of proving the defendant's negligence through the use of circumstantial evidence." *Jennings Buick* at 170. The res ipsa loquitur rule is most often utilized in cases involving "falling objects, passenger common carriers, or other situations which presented a dangerous threat of serious injury or death." (Citation omitted.) *King* at ¶ 25. A plaintiff need not "specifically plead the doctrine in order to invoke it," and "specific allegations of negligence in the complaint [do not] foreclose reliance upon it." *Jennings Buick* at 169.

Where the predicate conditions of res ipsa loquitur are established, the plaintiff is not required to offer affirmative evidence of the defendant's negligence, but may urge the factfinder to infer the defendant's negligence from the predicate conditions. *Torres v. Gentry*, 2007-Ohio-4781 (5th Dist.). "To warrant application of the rule a plaintiff must adduce evidence in support of two conclusions: (1) That the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed." *Hake v. George Wiedemann Brewing Co.*, 23 Ohio St.2d 65, 66-67, 262 N.E.2d 703 (1970).

The Ohio Supreme Court has stressed this rule of evidence should only be utilized *when a defendant's negligence is the only reasonable*

*inference from the facts*. (Emphasis added.) *King*, 2024-Ohio-2542 at ¶ 28, citing *Estate of Hall*, 2010-Ohio-1041; *Jennings Buick*, 63 Ohio St.2d at 169. When there is evidence presented to the jury which would allow the jury to find one or another potential cause of the injury is not attributable to the negligence of the defendant, res ipsa loquitur does not apply. (Citation omitted.) *Id.*

*Id.* at ¶¶ 28-30. See, also, *King v. Emergency Med. Transp., Inc.*, 2024-Ohio-2542 (5th Dist.) Both *Austin* and *King* rely upon the Ohio Supreme Court case of *Estate of Hall v. Akron Gen. Med Ctr.*, 2010-Ohio-1041, in which the appellant argued that res ipsa applied to a medical malpractice case involving a dialysis-catheterization procedure. The Court determined that res ipsa did not apply, stating:

This holding is consistent with the doctrine of res ipsa loquitur, which was "founded upon an absence of specific proof concerning acts or omissions which would constitute negligence." *Morgan v. Children's Hosp.*, 18 Ohio St.3d at 192, 480 N.E.2d 464 (Holmes, J., dissenting). Under the evidence presented in this case, there are two equally efficient and probable causes of the injury; thus, it would have been improper to instruct the jury that it could infer negligence. Based on the evidence produced, this is not a situation where it can be said that "the thing speaks for itself." Rather, this case represents the classic battle between expert witnesses. As the court of appeals stated, "The trier of fact must weigh the evidence and decide which experts to believe." 2008 Ohio 4332, P 30. Consequently, the trial court properly declined to instruct the jury on the doctrine of res ipsa loquitur.

*Id.* at ¶ 35.

**{¶22}** In this case, evidence was presented during trial that the appellant hired an outside company to assist in moving its physical therapy equipment, including the resistance band board, to the new location in 2019. It was this company that installed the board. The appellant did not install the board, and had no knowledge regarding the nature of the installation. Thus, there was a potential cause of the injury not attributable to the appellant – i.e., the outside company – presented to the jury. Because the jury was presented with evidence of negligence on the part of both the appellant and the outside company, res ipsa loquitur does not apply herein, and the trial court erred when it allowed the appellees to rely upon res ipsa to establish the nexus between the appellant's duty and the appellees' injuries.

**{¶23}** We are sympathetic to the injuries suffered by the appellees. However, we are bound by the law set forth in the *Estate of Hall, King,* and *Austin* cases. Without the application of res ipsa, the appellees cannot overcome the first and second hurdles of their negligence claim against the appellant, and the trial court erred when it denied the appellant's motion for directed verdict. We find that the appellant's second assignment of error is well taken. It is therefore sustained, and the decision of the trial court denying the appellant's motion for directed verdict is reversed.

### ASSIGNMENTS OF ERROR NOS. I, III, and IV

**{¶24}** Our decision to sustain the appellant's second assignment of error leads to the reversal of the trial court's decision, is dispositive, and renders the appellant's assignments of error numbers one, three and four moot.

# CONCLUSION

{¶25} Based upon the foregoing, we sustain the appellant's second assignment of error, reverse the decision of the trial court denying the appellant's motion for directed verdict, and remand the matter for entry of a directed verdict consistent with this opinion. Because the appellees' claims are subject to a directed verdict, thus concluding the case, the appellant's assignments of error numbers one, three, and four are moot.

{¶26} Costs to appellees.

By: Baldwin, J.

Gormley, P.J. and

Montgomery, J. concur.